# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Deanna Richert, | Civ. No. 09-763 (ADM/JJK) |
| Plaintiff, | |
| v. | **ORDER AND REPORT** |
| | **AND RECOMMENDATION** |
| National Arbitration Forum, LLC; and Dispute Management Services, LLC, doing business as Forthright; | |
| Defendants. | |

Daniel E. Warner, Esq., Warner Law Office, counsel for Plaintiff.

Douglas R. Christensen, Esq., and Marilyn J. Clark, Esq., Dorsey & Whitney LLP, counsel for Defendants.

## INTRODUCTION

Plaintiff Deanne Richert has sued her former employers, National Arbitration Forum, LLC ("NAF"), and Dispute Management Services, LLC, d/b/a/ Forthright ("Forthright"), for civil-rights disputes, asserting claims under Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e *et. seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et. seq.*, and the Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363A.01 *et. seq.*  Richert also seeks a declaratory judgment that an alleged agreement to arbitrate the civil-rights disputes is null, void, unconscionable, and unenforceable, and seeks an injunction prohibiting enforcement of the alleged arbitration agreement.

Richert further seeks an injunction against Defendants' practices that allegedly violate the Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43 *et. seq.*, and the Minnesota Consumer Fraud Act, Minn. Stat. § 325F.68 *et. seq.*

This matter is before the Court for a Report and Recommendation on Defendants' Motion to Compel Arbitration and Dismiss or Stay (Doc. No. 14).[1] *See* 28 U.S.C. § 636 and D. Minn. Loc. R. 72.1. This matter is also before the Court on Plaintiff's Motion for Discovery on Arbitration Issues (Doc. No. 21), and Motion to Stay Decision on Motion to Compel Arbitration (Doc. No. 23). For the reasons that follow, this Court recommends that Defendants' motion be granted, and Richert's motions be denied.

## BACKGROUND

Richert previously worked as a Case Coordinator for the National Arbitration Forum ("Forum"), from January 2003 through June 2007. The Forum was an alternative dispute resolution services administrator. On December 18, 2006, while employed at the Forum, Richert signed a document entitled "National

---

[1]     Motions to compel arbitration, like the instant motion, are treated as motions to dismiss for lack of subject-matter jurisdiction. *See, e.g., Evans v. Hudson Coal Co.*, 165 F.2d 970, 972 (3d Cir. 1948); *Jacobsen v. J.K. Pontiac GMC Truck, Inc.*, No. 01 C 4312, 2001 WL 1568817, at *1 n.1 (N.D. Ill. Dec. 10, 2001). The Court may consider matters beyond the pleadings in resolving such motions. *E.g., Deuser v. Vecera*, 139 F.3d 1190, 1191 n.3 (8th Cir. 1998); *Drevlow v. Lutheran Church, Mo. Synod*, 991 F.2d 468, 470 (8th Cir. 1993).

Arbitration Forum Procedures Agreement," which contains an arbitration

provision at Paragraph 9. Paragraph 9 provides as follows:

> FORUM and Employee agree that any dispute between them or
> claim by either against the other or any agent or affiliate of the other,
> whether related to this agreement or otherwise, shall be resolved by
> neutral binding arbitration of the FORUM *Code of Procedure* then in
> effect when the claim is filed or the American Arbitration Association
> National Rules for the Resolution of Employment Disputes then in
> effect when the claim is filed, as selected by the party first making
> the claim. However, the Parties shall mutually select the arbitrator
> who shall administer and conduct the arbitration. This agreement
> shall be governed by the Federal Arbitration Act and judgment upon
> the award may be entered in any court of competent jurisdiction.

(Doc. No. 17, Aff. of Douglas R. Christensen ("Christensen Aff.") ¶ 3, Ex. B.)[2]

Thereafter, in June 2007, the Forum went through a corporate

restructuring. The Forum became a holding company, and two new corporations

were formed—NAF and Forthright. NAF became a wholly owned subsidiary of

the Forum and Forthright was spun off from the Forum, with the Forum retaining

a majority interest in Forthright. NAF is an alternative-dispute-resolution-services

---

[2]   In January 2003, on her first day of employment, Richert had signed a
"National Arbitration Forum Procedures Agreement" with a similar provision.
There, paragraph 6 provides the following:

> The Forum and EMPLOYEE agree that any dispute between them
> or claim by either against the other or any agent or affiliate of the
> other, whether related to this agreement or otherwise, shall be
> resulted by neutral binding arbitration or the Forum or the American
> Arbitration Association, as selected by the party first making the
> claim. This agreement shall be governed by the Federal Arbitration
> Act and judgment upon the award may be entered in any court of
> competent jurisdiction.

(Christensen Aff. ¶ 2, Ex. A.)

administrator that recruits, trains, and maintains a pool of independent neutrals. It also administers claims filed under the National Arbitration Forum Code of Procedure, and maintains and updates the Code of Procedure. Forthright is a transaction-processing company and an authorized administrator of NAF and the Forum. Prior to 2007, the Forum carried out the administrative functions that Forthright now performs.

The parties agree that after June 27, 2007, Richert was not employed by the Forum. Richert alleges that NAF and Forthright thereafter became her joint employers. Defendants assert that on approximately June 27, 2007, Richert became employed by Forthright; NAF denies, however, that it was ever Richert's employer. Regardless, Richert worked for one or both entities (Forthright and/or NAF) as a Code Department Manager, and then was promoted to Department Manager, until her position was eliminated[3] and her employment was terminated in July 2008.

Richert alleges that before that July 2008 termination, but after her employment had ended with the Forum in June 2007, Defendants denied her consideration for, and the opportunity to apply for, positions for which she was qualified, because of her gender and age. She asserts that this conduct violated her rights under Title VII, the ADEA, and the MHRA. After the parties received a

---

[3]     Defendants assert that in April 2008, Forthright decided to close the California office where Richert worked for economic reasons, and that because Richert's duties focused almost exclusively on California operations, Richert's manager decided to eliminate Richert's position.

Notice of Right to Sue from the U.S. Equal Employment Opportunity Commission

("EEOC"), Defendants demanded that Richert submit her claims to arbitration

pursuant to Paragraph 9 of the December 18, 2006 Agreement ("2006

Agreement").  In her Complaint, in addition to the Title VII, the ADEA, and the

MHRA claims, Richert seeks a declaratory judgment that the arbitration clause in

the 2006 Agreement is null, void, unconscionable, and unenforceable.

## DISCUSSION

## I.    Standard of Review

The Federal Arbitration Act ("FAA" or "the Act"), 9 U.S.C. §§ 1-16, governs

arbitration agreements relating to transactions involving interstate commerce.

The Act provides:

> A written provision . . . or a contract evidencing a transaction
> involving commerce[4] to settle by arbitration a controversy
> thereafter arising out of such contract or transaction, or the refusal to
> perform the whole or any part thereof, or an agreement in writing to
> submit to arbitration an existing controversy arising out of such a
> contract, transaction, or refusal, shall be valid, irrevocable, and
> enforceable, save upon such grounds as exist at law or in equity for
> the revocation of any contract.

9 U.S.C. § 2.  The Act establishes a "federal policy favoring arbitration," requiring

that courts "rigorously enforce agreements to arbitrate."  *Shearson/Am. Express,*

*Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (quotations omitted).  "Generally,

'there is a presumption of arbitrability in the sense that an order to arbitrate the

---

[4]    The parties do not dispute that the transaction here involves commerce for
purposes of the FAA.

particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Telectronics Pacing Sys., Inc. v. Guidant Corp.*, 143 F.3d 428, 433 (8th Cir. 1998) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)) (further internal quotations omitted). When considering a motion to compel arbitration, the Court is required to determine whether: (1) a valid agreement to arbitrate exists between the parties; and (2) the specific dispute is within the scope of that agreement. *See Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003); *Pro Tech Indus., Inc. v. URS Corp.*, 377 F.3d 868, 871 (8th Cir. 2004). "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000) (citations omitted).

## II. Motion to Compel Arbitration

Richert opposes Defendants' motion to compel arbitration on three grounds. First, she claims that she has no arbitration agreement with Defendants. Second, she claims that Defendants have not met their burden of showing a knowing and voluntary waiver of the right to litigate statutory claims before a jury. Third, she argues that even if there is a valid agreement and the dispute falls within the provisions of the agreement, the arbitration clause is unconscionable and thus unenforceable because the proposed system of arbitration cannot assure a fair hearing.

## A.     Enforceability of Valid Agreement by Nonsignatories

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs.*, 475 U.S. at 648 (quotations omitted).  "When deciding whether the parties agreed to arbitrate a certain matter . . . , courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *Hudson v. Conagra Poultry Co.*, 484 F.3d 496, 500 (8th Cir. 2007) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).  Thus, state contract law determines questions concerning validity of an arbitration agreement.  *Lyster v. Ryan's Family Steak Houses, Inc.*, 239 F.3d 943, 946 (8th Cir. 2001).  However, Richert is not really contesting the *validity* of the original agreement between herself and the Forum.  It is undisputed that Richert signed the 2006 Agreement while she was employed by the Forum.  Instead, Richert contends that the language "agents and/or affiliates" in Paragraph 9 of the 2006 Agreement is vague.  She further contends that because neither Defendant existed at the time she signed the 2006 Agreement, and that agreement did not contain successor employer language, there is no valid agreement between herself and Defendants.[5]   Defendants, however, refer to the broad language in the 2006

---

[5]     It is undisputed that Richert did not sign a new arbitration agreement with Defendants once employed by them.  Forthright presented her with a new arbitration agreement, but she refused to sign it.  Richert, however, acknowledges that she continued to work for Defendants after receipt of that arbitration agreement.  Because this Court recommends compelling arbitration

(Footnote Continued on Next Page)

Agreement requiring Richert and the Forum to resolve disputes involving claims against "any agent or affiliate of the other" by arbitration. Defendants argue that the 2006 Agreement's broad language creates an obligation on Plaintiff to arbitrate her claims against NAF and Forthright because they are agents or affiliates of the Forum.

Defendants are obviously not signatories to the 2006 Agreement containing the arbitration clause, and there is no other written agreement signed by Defendants and Richert in which they agreed to arbitrate any disputes. In addition, there is no evidence in the record that the Forum transferred all of its assets to either Defendant, nor is there evidence showing that Defendants have ceased to be separate entities from the Forum. Instead, Defendants represent

(Footnote Continued from Previous Page)
based on the 2006 Agreement, this Court does not address whether there was a separate binding agreement between Richert and Forthright based on the arbitration agreement Richert received from Forthright. Nonetheless, this Court notes that in some circumstances courts have held that "continued employment after an employer imposes a term or condition upon employment demonstrates the acceptance and consideration necessary to form an enforceable contract. *McNamara v. Yellow Transportation, Inc.*, 570 F.3d 950, 956 (8th Cir. 2009) (citing *Berkley v. Dillard's Inc.*, 450 F.3d 775, 777 (8th Cir. 2006) ("By continuing her employment, [the employee] accepted the terms of the arbitration program."); *Winfrey v. Bridgestone/Firestone, Inc.*, No. 99-1405, 1999 WL 1295310, at *1 (8th Cir. 1999) (unpublished table decision) ("[W]here an at-will employee . . . retains employment with knowledge of new or changed conditions, . . . retention of employment constitute[d] acceptance of the offer of a unilateral contract; by continuing to stay on the job, although free to leave, [the employee] supplie[d] the necessary consideration for the offer, and agreed to be bound by the Plan's mandatory arbitration provision.") (citation and quotation omitted)). Therefore, the new arbitration agreement between Forthright and Richert arguably is a valid contract, and at a minimum, arbitration should be required for Richert's claims against Forthright.

that after the Forum's 2007 corporate reorganization, NAF became a wholly owned subsidiary of the Forum, and Forthright spun off from the Forum as its own company, with the Forum retaining a majority interest in the company.

The first question then is whether Defendants, nonsignatories to the 2006 Agreement, can rely on the arbitration clause within the 2006 Agreement to compel Richert to arbitrate her claims. The Federal Arbitration Act "create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). This Court should apply the federal substantive law of arbitrability when determining whether nonsignatories can enforce the arbitration agreement. *See Donaldson Co. v. Burroughs Diesel, Inc.*, 573 F.3d 578, ___[6] (8th Cir. 2009) (citing cases).

There is a strong federal policy in favor or arbitration agreements. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991). Questions of arbitrability are to be addressed with regard to that policy. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24. Like other contracts, arbitration agreements "are enforced according to their terms . . . and according to the intentions of the parties." *First Options of Chicago*, 514 U.S. at 947 (quotations and citation omitted). "[A]ny doubts raised in construing contract language on arbitrability 'should be resolved

---

[6]     Page numbers not assigned yet.

in favor of arbitration.'" *Telectronics Pacing Sys.*, 143 F.3d at 430-31 (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25).

Generally, a court can only compel arbitration of claims that the parties have agreed to arbitrate. *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995). However, "[a] nonsignatory can enforce an arbitration clause against a signatory to the agreement on several circumstances." *CD Partners v. Grizzle*, 424 F.3d 795, 798 (8th Cir. 2005). "One is when the relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided." *Id.* (quotations omitted). "Another is when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting [its] claims against the nonsignatory." *Id.* (quotations omitted). "When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate." *Id.* (quotations omitted). This second circumstance is derived from the "intertwined-claims" doctrine, which provides that a nonsignatory may enforce an arbitration provision where the signatory alleges "substantially interdependent and concerted misconduct" by the nonsignatory and one or more of the signatories. *See, e.g., Grigson v. Creative Artists Agency LLC*, 210 F.3d 524, 527 (5th Cir. 2000); *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th

Cir. 1999).  "Unlike the intertwined-claims test, which looks to the claims asserted, the close-relationship test analyzes the relationship between the signatory and nonsignatory parties 'under agency or related principles.'" *Donaldson*, 573 F.3d 578, ___ (quoting *MS Dealer*, 177 F.3d at 947).

Notably, "the test for determining whether a nonsignatory can force a signatory into arbitration is different from the test for determining whether a signatory can force a nonsignatory into arbitration[.]"  *CD Partners*, 424 F.3d at 799.  "[A] willing nonsignatory seeking to arbitrate with a signatory that is unwilling may do so under what has been called an alternative estoppel theory which takes into consideration the relationships of persons, wrongs, and issues, [b]ut a willing signatory seeking to arbitrate with a *non*-signatory that is unwilling must establish at least one of the five theories described in [*Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995)]."  *Id.* (quoting *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 131 (2d Cir. 2003)).  "The courts clearly recognize a nonsignatory's ability to force a signatory into arbitration under the 'alternative' estoppel theory when the relationship of the persons, wrongs and issues involved is a close one."  *Id.* (citing *Astra Oil Co. v. Rover Navigation, Ltd.*, 344 F.3d 276, 279-80 (2d Cir. 2003) (holding that a nonsignatory may compel arbitration against a signatory to an arbitration agreement because of the nonsignatory's close affiliation with the other signatory party to the agreement)).  Consistent with that theory, a nonsignatory should be able to enforce an arbitration clause against a signatory when the plain language

of the arbitration clause shows that the signatory intended for the arbitration clause to encompass claims asserted by the signatory against that nonsignatory. *See Lyster*, 239 F.3d 943, 947 (concluding that the plain meaning of the language in the agreement required for plaintiff's Title VII claim to be pursued in an arbitral forum); *cf. First Options of Chicago*, 514 U.S. 938, 947 (1995) ("[T]he basic objective in this area is not to resolve disputes in the quickest manner possible, no matter what the parties' wishes . . . but to ensure that commercial arbitration agreements, like other contracts, are enforced according to their terms.") (quotations and citation omitted).

Here, Defendants and the Forum arguably have a sufficiently close relationship with one another, which under the close-relationship test should allow the non-signatory Defendants to compel Richert, the signatory plaintiff, to arbitrate. However, even if the Defendants did not meet the close-relationship test, and even though the 2006 Agreement did not include a clause stating that the arbitration provision applied to the signatories' "successors in interest," the signatories to the arbitration agreement did broadly and plainly state that "any . . . claim by [Richert] against . . . any agent or affiliate of [the Forum], whether related to this agreement or otherwise, shall be resolved by neutral binding arbitration." (Christensen Aff. ¶ 3, Ex. B; *see Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1297 (3d Cir. 1996) (instructing that "if [the nonsignatories] wanted to be able to invoke the arbitration and forum selection clauses, they should have directed [their affiliate, a signatory to the agreement,] to include appropriate

language in the 1989 and 1990 agreements allowing them to do so").  The

signatories here included plain language that encompasses claims asserted by

Richert against "any agent or affiliate" of the Forum.[7]

Defendants have explained how they are agents and affiliates of the

Forum, representing that Forthright is the Forum's authorized administrator, and

therefore arguably an agent of the Forum,[8] and NAF is a wholly owned

subsidiary of the Forum, and therefore arguably an affiliate of the Forum.[9]

Richert has presented no evidence, or even argument, to rebut the fact that

Forthright and NAF are agents or affiliates of the Forum, even though it is her

burden to demonstrate that the claims at issue are unsuitable for arbitration.

Instead, she contends that the arbitration provision does not apply to Defendants

because they did not exist when she and the Forum executed the arbitration

---

[7]    Richert cites to *Saliterman v. Finney*, 361 N.W.2d 175 (Minn. Ct. App. 1985), to support her argument that the arbitration agreement should have contained a successor clause if the parties to the contract wanted any obligations to be carried forward to a future employer.  This Court finds that *Saliterman* is not instructive here, however, because there the agreement contained a successor clause.  The *Saliterman* court did not comment on whether the parties' desire to arbitrate can be applied to other entities in the future in the absence of a successor clause.  Further, termination of an employment contract does not necessarily terminate an arbitration provision.  *Litton Fin. Printing Div. v. N.L.R.B.*, 501 U.S. 190, 208 n.3 (1991).

[8]    The common definition of agent is "[o]ne who is authorized to act for or in place of another[.]"  *Black's Law Dictionary* 72 (9th ed. 2009).

[9]    The common definition of affiliate is "[a] corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation."  *Black's Law Dictionary* 67 (9th ed. 2009).

agreement, and the terms "agent or affiliate" are not intended to encompass future agents or affiliates of the Forum. Nothing in the plain language of the arbitration agreement indicates, however, that the terms "agent or affiliate" are to be limited to the agents or affiliates existing at the time the parties entered the agreement. Instead, the parties used the term "any" to precede the terms "agent or affiliate." The phrase "any agent or affiliate" indicates that the parties did not intend for to create any temporal limitations for that clause's applicability. Therefore, according to the arbitration agreement's plain terms, the words "agent or affiliate" encompass those agents and affiliates of the Forum in existence *at the time the dispute arose*. This Court therefore concludes that the broad, plain language of the 2006 Agreement, together with the federal policy in favor of arbitration, allows certain non-signatory parties, including Defendants here, to invoke the arbitration clause.

**B. Knowing and Voluntary Waiver of the Right to Litigate Statutory Claims Before a Jury**

Richert asserts that Paragraph 9 does not mandate the arbitration of her statutory claims under Title VII, the ADEA, or the MHRA, and does not evince any agreement by her to waive her rights to trial by jury. Specifically, Richert argues that as a matter of law, statutory claims cannot be arbitrated unless the arbitration clause specifically states so. Defendants disagree.

Arbitration under the FAA is consensual and proceeds according to the parties' terms in the agreement. As such, parties may specify in the contract the

issues subject to arbitration and the rules under which arbitration is conducted.
*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Univ.*, 489 U.S. 468, 479
(1989); *see also EEOC v. Waffle House, Inc.*, 534 U.S. 279, 293-94 (2002). In
so doing, however, substantive statutory rights are unaffected by an agreement
to arbitrate. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymoth, Inc.*, 473 U.S.
614, 628 (1985) (holding that "[b]y agreeing to arbitrate a statutory claim, a party
does not forgo the substantive rights afford by the statute; it only submits to their
resolution in an arbitral, rather than a judicial, forum"). "The decision to resolve
[federal statutory] claims by way of arbitration instead of litigation does not waive
the [substantive] statutory right to be free from workplace age discrimination; it
waives only the right to seek relief from a court in the first instance." *14 Penn
Plaza, LLC v. Pyett*, 129 S. Ct. 1456, 1469 (2009).

In determining whether claims come within the scope of an arbitration
provision, "the district court does not reach the potential merits of any claim but
construes the clause liberally, resolving any doubts in favor of arbitration and
granting the motion [to compel arbitration] unless it may be said with positive
assurance that the arbitration clause is not susceptible of an interpretation that
covers the asserted dispute." *3M Co. v. Amtex Sec., Inc.*, 542 F.3d 1193, 1199
(8th Cir. 2008) (quotations omitted); *see also Medcam, Inc. v. MCNC*, 414 F.3d
972, 975 (8th Cir. 2005) (stating that a motion to compel arbitration should be
granted if the arbitration clause is "susceptible of an interpretation that covers the
asserted dispute"); *accord, e.g., Moses H. Cone Mem'l Hosp.*, 460 U.S. 24-25

(stating that because of the strong federal policy favoring arbitration, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration").

Contrary to Richert's assertions, "[a] party cannot avoid arbitration [of a statutory claim] . . . because the arbitration clause uses general, inclusive language, rather than listing every possible specific claim." *Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1221 (11th Cir. 2000). And, "[a]n arbitration agreement is not vague solely because it includes the universe of the parties' potential claims against the other." *Id.* Further, the Eighth Circuit has "recognized the permissibility of subjecting employment-related civil-rights claims to arbitration." *McNamara*, 570 F.3d at 957; *see also Patterson v. Tenet Healthcare, Inc.*, 113 F.3d 832, 837-38 (8th Cir. 1997) (holding that Title VII claims could be subject to arbitration); *see also Gilmer*, 500 U.S. at 35 (holding that ADEA claims could be subject to arbitration). The Eighth Circuit has also stated that when determining whether such claims fall within the scope of an agreement to arbitrate, "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." *McNamara*, 570 F.3d at 957 (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25); *see also WoldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997) ("[Given] the strong federal policy in favor of arbitration . . . the existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an

interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.") (quotations and citation omitted). Consistent with those principles, courts have concluded that expansively worded arbitration clauses can mandate the arbitration of statutory claims even if such claims are not specifically referenced in the agreement. *See Gillespie v. Colonial Life & Accodent Ins. Co.*, No. 08-689, 2009 WL 890579, at *8 (W.D. Pa. Mar. 30, 2009) (finding that the plaintiff's sexual-harassment and retaliation claims under Title VII fell within the scope of a broad arbitration clause, despite the fact that such statutory claims were not specifically identified in the parties' agreement to arbitrate).

Here, the language of the arbitration clause is broad and unequivocal. It states that "*any dispute* between them or claim by either against the other or any agent or affiliate of the other, *whether related to this agreement or otherwise*, shall be resolved by neutral binding arbitration." (Christensen Aff. ¶ 3, Ex. B (emphasis added).) By using this inclusive language, the parties agreed to arbitrate any and all claims against each other, with no exceptions. Given the strong federal policy favoring arbitration, the broad language in the arbitration agreement, and Richert's heightened knowledge and experience with arbitration agreements, this Court concludes that Richert's statutory claims fall within the scope of the 2006 Agreement and she knowingly agreed to arbitrate those claims.

**C.     Whether the Arbitration Clause is Unconscionable and Unenforceable**

Richert asserts that during her employment with Defendants, she witnessed fraudulent and corrupt practices in the administration of arbitration cases by Defendants. She asserts that Defendants' conduct calls into question the neutrality of any arbitrator associated in any way with Defendants and also makes any arbitration fraudulent and unconscionable, and therefore null, void, and unenforceable. Defendants assert that Richert's arguments are without merit, are based on speculation, and should not serve as a vehicle for her to circumvent her contractual duties. Further, Defendants assert that Richert's unsubstantiated allegations that Defendants influenced certain arbitrators' decisions are irrelevant given that the 2006 Agreement clearly establishes that Richert may choose to have the American Arbitration Association ("AAA") Rules govern the arbitration proceedings, and that Richert is to be involved in the process of selecting a neutral.

If Richert chooses to file her claim with the AAA, the AAA will administer and manage the arbitration.

> For over 80 years, the American Arbitration Association has set the standards for the development of fair and equitable dispute resolution procedures. The development of the *Employment Arbitration Rules and Mediation Procedures*,[10] and the reconstitution of a select and diverse roster of expert neutrals to hear

---

10     On June 1, 1996, the AAA issued *National Rules for the Resolution of Employment Disputes* (now known as the *Employment Arbitration Rules and Mediation Procedures*).  (*Id.* at 4.)

and resolve disputes, are the most recent initiatives of the
Association to provide private, efficient and cost-effective procedures
for out-of-court settlement of workplace disputes.

(AAA Employment Arbitration Rules and Mediation Procedures, Christensen Aff.

¶ 4, Ex. C at 3.)  There is nothing in the record to suggest that the AAA has any

ties to, or affiliation with, the Forum.

The AAA's policy on employment ADR is guided by the state of
existing law, as well as its obligation to act in an impartial manner.
In following the law, and in the interest of providing an appropriate
forum for the resolution of employment disputes, the Association
administers dispute resolution programs which meet the due process
standards as outlined in its *Employment Arbitration Rules and
Mediation Procedures* and the *Due Process Protocol*.

(*Id.* at 4.)

Pursuant to the AAA Rules, the AAA would administer the arbitration and

provide the parties with a list of neutral arbitrators from its roster of qualified

arbitrators so that the parties could mutually select the arbitrator.  (*See id.* at 6

("When parties agree to arbitrate under these rules, or when they provide for

arbitration by the AAA and an arbitration is initiated under these rules, they

thereby authorize the AAA to administer the arbitration."); *see also id.* at 8 ("The

roster of available arbitrators will be established on a non-discriminatory basis,

diverse by gender, ethnicity, background, and qualifications.").)  Once an

arbitrator is selected, that arbitrator "shall disclose to the AAA any circumstance

likely to give rise to justifiable doubt as to the arbitrator's impartiality or

independence, including any bias or any financial or personal interest in the

result of the arbitration or any past or present relationship with the parties or their

representatives.  Such obligation shall remain in effect throughout the arbitration."  (*Id.* at 9.)  "Upon receipt of such information from the arbitrator or another source, the AAA shall communicate the information to the parties[.]"  (*Id.*)

"Generally, when deciding whether an arbitration provision is unconscionable, courts apply ordinary state-law principles governing the formation of contracts."  *Pro Tech Indus.*, 377 F.3d at 872.  Under Minnesota law, "a contract is unconscionable if no clear-thinking person would make it, or if no such person would accept it."  *Wold v. Dell Fin. Servs.*, 598 F. Supp. 2d 984, 988 (D. Minn. 2009) (citing *Kauffman Stewart, Inc. v. Weinbrenner Shoe Co.*, 589 N.W.2d 499, 502 (Minn. Ct. App. 1999)).  "[T]he fact that arbitration agreements are preferred as a matter of national policy creates a presumption that they are generally reasonable as a matter of contract law."  *Id.* (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)).  Courts routinely reject challenges to arbitration clauses on unconscionability grounds.  *See, e.g., Siebert v. Amateur Athletic Union of the United States, Inc.*, 422 F. Supp. 2d 1033, 1041-44 (D. Minn. 2006); *Hunt v. Up North Plastics, Inc.*, 980 F. Supp. 1046, 1050-51 (D. Minn. 1997).

Richert asserts that even though Paragraph 9 allows her the ability to select the AAA as an alternative mechanism for arbitrations, she has no way of knowing if an arbitrator selected through the AAA is an arbitrator who also relies or would like to rely on Defendants for his or her livelihood.  The Court finds this assertion meritless.  As explained above, under the AAA Rules, any arbitrator

appointed is required to disclose "any bias or any financial or personal interest in the result of the arbitration or any past or present relationship with the parties or their representatives." (Christensen Aff. ¶ 4, Ex. C at 9.) The arbitrator would have to violate his or her duty and in effect engage in a fraud by failing to disclose such information. Richert's contention that some future, unknown AAA arbitrator might be biased is obviously both premature and speculative, and this Court cannot make a finding that the arbitration agreement is unconscionable on this basis. *See Thomas and King, Inc. v. Jaramillo*, No. 08-191-JBC, 2009 WL 649073, at *10-11 (E.D. Ky. Mar. 10, 2009) (stating that the plaintiff's mere speculation that the independent arbitration company's arbitrator-selection process may be biased was insufficient to support a finding that the agreement was unconscionable); *see also In re Halliburton Co.*, 80 S.W.3d 566, 572 (Tex. May 30, 2002) (rejecting employee's claim that an arbitration clause in her employment agreement was unconscionable where the agreement at issue included several terms protecting the employee, including a provision that both parties were to participate in the selection of a neutral arbitrator).

Richert worked in alternative-dispute-resolution services, and therefore, at a minimum, had a heightened knowledge regarding arbitration and arbitration agreements at the time she entered into the 2006 Agreement. Moreover, Richert has not shown how the arbitration clause unreasonably favors the Defendants when she has the ability to be involved in the selection of the AAA arbitrator. The 2006 Agreement provides that "the Parties shall mutually select the arbitrator

who shall administer and conduct the arbitration."  Providing for such discretion indicates the agreement's fairness.  And the applicable AAA rules include detailed and fair procedures for the parties to utilize in making their arbitrator selection.  (*See* Christensen Aff. ¶ 4, Ex. C at 8, at ¶ 12.c.)  Further, this Court finds it highly unlikely that Richert will not be able to find an unbiased arbitrator out of the more than 7,000 neutrals on the AAA's Panel of Arbitrators.  See AAA Website, *available at* http://www.adr.org/arb_med.  Based on all of the above, this Court can not conclude that "no clear-thinking person" would have made such an agreement or would have accepted such terms as those in the 2006 Agreement.  *See Wold*, 598 F. Supp. 2d at 988.

Finally, Richert asserts that in order to substantiate her claim that the enforcement of arbitration would be unconscionable she needs additional discovery and requests the Court to stay its decision on the motion to compel arbitration until such discovery has been disclosed.  But this Court concludes that such discovery is overly intrusive, burdensome and without justification, and therefore denies Richert's requests.

This Court notes, however, that nothing in this decision precludes Richert from raising the issue of arbitrator bias, if good cause is shown for such a challenge, after the arbitration has been concluded.  Therefore, in light of the fact that the FAA "protects against bias, by providing that courts may overturn arbitration decisions '[w]here there was evident partiality or corruption in the arbitrators,'" this Court concludes that Richert cannot avoid the arbitration

process here by simply alleging that the arbitrators might be biased. *See Gilmer*, 500 U.S. at 30 (quoting 9 U.S.C. § 10(b), and declining "to indulge the presumption that the parties and arbitral body conducting a proceeding will be unable or unwilling to retain competent, conscientious and impartial arbitrators") (quotations omitted); *see also Smith v. Am. Arbitration Ass'n*, 233 F.3d 502, 506 (7th Cir. 2000) ("The time to challenge an arbitration, on whatever grounds, including bias, is when the arbitration is completed and an award rendered."); *Aviall, Inc. v. Ryder Sys., Inc.*, 110 F.3d 892, 895 (2d Cir. 1997) ("[I]t is well established that a district court cannot entertain an attack upon the qualifications or partiality of arbitrators until after the conclusion of the arbitration and the rendition of an award.").

For the reasons stated above and because the Federal Arbitration Act, 9 U.S.C. § 4, requires a district court to order the parties "to proceed to arbitration in accordance with the terms of the agreement" when a party refuses to participate in arbitration, this Court recommends ordering the parties to proceed to arbitration.

## II.    Motion to Dismiss or Stay

Defendants moves to dismiss or stay Richert's case pending a resolution in arbitration. A federal court must stay proceedings and compel arbitration once it determines that a dispute falls within the scope of a valid arbitration agreement. *Houlihan v. Offerman & Co.*, 31 F.3d 692, 695 (8th Cir. 1994) (citing 9 U.S.C.

§§ 3 & 4).  This Court has concluded that Richert's claims against Defendants are arbitrable.  Therefore, a mandatory stay is appropriate.

## ORDER AND RECOMMENDATION

Based on the file, and all the records and proceedings therein, **IT IS HEREBY ORDERED** that:

1.      Plaintiff's Motion for Discovery on Arbitration Issues (Doc. No. 21), is **DENIED**; and

2.  Plaintiff's Motion to Stay Decision on Motion to Compel Arbitration (Doc. No. 23), is **DENIED**.

For the reasons stated, **IT IS HEREBY RECOMMENDED** that:

1.      Defendants' Motion to Compel Arbitration and Dismiss or Stay (Doc. No. 14), be **GRANTED**.  This Court recommends that the District Court **DENY** Plaintiff's request for declaratory judgment asserted in Count One of her Complaint and **ORDER** Plaintiff to arbitrate each of her remaining claims against Defendants; and

2.      This Court recommends that all claims be **STAYED** pending the outcome of arbitration.

Date:  August 20, 2009

_s/ Jeffrey J. Keyes_
JEFFREY J. KEYES
United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **September 3, 2009**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within ten days after service thereof.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.